Filed 2/5/21 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MORIAH NOEL QUINN,<br><br>Defendant and Appellant. | A156932<br><br>(San Mateo County<br>Super. Ct. No. 18NF014303A)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on January 11, 2021, be modified as follows:

On page 16, after the last sentence of the Disposition, add as footnote 6 the following footnote:

> [6] Nothing herein precludes defendant from moving the trial court to modify the conditions of her probation in light of the reduced term of probation.

There is no change in the judgment.

The petition for rehearing is denied.

Dated: _____                                        POLLAK, P. J.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts 1, 2, and 3 of the Discussion.

Trial court:                              San Mateo County Superior Court

Trial judge:                             Honorable Nancy Fineman

Counsel for plaintiff and appellant:     Jonathan D. Roberts, under appointment by the
                                         Court of Appeal

Counsel for defendant and respondent:    Xavier Becerra
                                         Attorney General of California
                                         Lance E. Winters
                                         Chief Assistant Attorney General
                                         Jeffrey M. Laurence
                                         Senior Assistant Attorney General
                                         Catherine A. Rivlin
                                         Supervising Deputy Attorney General
                                         Basil R. Williams
                                         Deputy Attorney General

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>MORIAH NOEL QUINN,<br><br>    Defendant and Appellant. | A156932<br><br>(San Mateo County<br>Super. Ct. No. 18NF014303A) |

Following her conviction for attempting to transport marijuana across state lines, defendant Moriah Noel Quinn was placed on supervised probation with the condition, among others, that she abstain from the use and possession of controlled substances, including marijuana. On appeal, defendant contends the condition prohibiting the use or possession of marijuana is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and that the restriction on her use or possession of "controlled substances" is overbroad. Defendant also challenges a $300 restitution fine and contends that the term of her probation must be reduced from three years to two years pursuant to recently enacted Assembly Bill No. 1950 (2019-2020 Reg. Sess.). We conclude that the prohibition on defendant's use and possession of marijuana is amply justified by her current conviction and criminal history

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts 1, 2, and 3 of the Discussion.

1

but agree that the restriction on her use or possession of "controlled substances" is overbroad and must be modified to permit the use and possession of legally prescribed medications. We also agree that the restitution fine must be stricken and the term of defendant's probation reduced to two years under the recent statutory amendment.

## Background

Defendant was convicted by a jury of felony attempted interstate transportation of marijuana in violation of Health & Safety Code, section 11360, subdivision (a)(3). At trial, security-screening officers at San Francisco International Airport testified that they found over 13 pounds of marijuana in luggage belonging to defendant and her mother. After her arrest, defendant admitted that she did not pack her suitcase and was paid to transport the bag containing marijuana from San Francisco to New York. She also admitted that she had previously flown with marijuana in her luggage on at least two other occasions. Defendant was placed on supervised probation for a period of three years.

## Discussion

1. *The probation condition prohibiting use or possession of marijuana is not unreasonable.*[*]

A sentencing court has broad discretion to fashion appropriate conditions of probation that facilitate rehabilitation and foster public safety. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) We review the conditions imposed for abuse of discretion. (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) A condition of probation is invalid if it " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably

---

[*] See footnote, *ante,* page 1.

2

related to future criminality." ' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118, quoting *People v. Lent, supra,* 15 Cal.3d at p. 486.) "The *Lent* test "is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.' " (*Ricardo P.*, at p. 1118.)

There is no dispute that the condition satisfies the second prong of the test, as the possession and use of marijuana is not itself criminal in the State of California. (See *People v. Cruz* (2020) 54 Cal.App.5th 707, 711.) The condition, however, does not satisfy the remaining prongs. Contrary to defendant's arguments, the condition is amply supported by the facts of defendant's conviction and her prior criminal history. As reflected in the probation report, defendant was (1) convicted of attempting to transport marijuana for sale in the current offense; (2) had a prior felony conviction for possession of marijuana in Texas; (3) had an active warrant out of Madison County, Tennessee for drug related charges; (4) admitted to "being a 'mule' " in transporting narcotics; and (5) previously engaged in transporting or trafficking marijuana. The prohibition of her possessing marijuana is entirely reasonable.

Defendant's suggestion that the condition improperly restricts her *use* of marijuana because the record does not demonstrate she has a history of marijuana use is not persuasive. As the Attorney General argues, the court reasonably could have concluded that defendant's continued involvement with marijuana, whether possessing, using, transporting or selling, was impeding her rehabilitation and decreasing her chances for success on probation. Absent any indication in the record that an exception should be made for medicinal use of marijuana, the blanket prohibition was warranted in this case.

2. *The restriction that defendant "abstain from the use and possession of controlled substances" is overbroad.* \*

The court ordered defendant to "abstain from the use and possession of controlled substances including marijuana." The clerk's transcript adds the additional requirement that defendant "abstain from the use or possession of narcotics or illegal drugs." Defendant contends that the restriction that she "abstain from the use and possession of controlled substances" is overbroad because it fails to allow her to take prescription medications, and that the additional condition in the clerk's transcript is not controlling in light of the court's oral pronouncement. The Attorney General argues that the reporter's transcript cited by defendant contains a "transcription error" which was subsequently corrected to "reflect what was said on the record." The amended minute order eliminates the requirement that she "abstain from the use and possession of controlled substances including marijuana" and leaves in place the requirement that she "abstain from the use or possession of narcotics or illegal drugs, including marijuana." Defendant disputes the Attorney General's assertion that the correction resolved the matter and continues to seek clarification of the conditions of her probation.

The Attorney General does not dispute that a blanket prohibition on the use or possession of controlled substances without an exception for prescription medications is overbroad. Therefore, we see no reason not to provide the requested clarification. "Controlled substances" are defined and listed in Health and Safety Code sections 11054 and 11055. They include not only schedule I substances, which generally have no recognized medical use, like heroin (Health & Saf. Code, § 11054, subd. (c)(11), but many other commonly prescribed medications. Accordingly, the condition shall be

---

\* See footnote, *ante,* page 1.

4

modified to require that defendant abstain from the use and possession of controlled substances including marijuana without a valid prescription.

3. *The restitution fine must be stricken.*[*]

At sentencing, the trial court found that defendant was indigent and sought to "waive as many fees" as possible. The court explained that it was waiving these fees based on counsel's statement that his client was indigent and the probation department's report "that even though she's worked in the past, she's now dependent on her mother" and "also the fact that somebody that's served 188 days in jail and now has a felony conviction on her is going to be -- has not been able to be employed [in the past] and may find it hard to be employed in the future." However, the court imposed the minimum "restitution fine plus the ten percent collection fee" noting that imposition of a restitution fine under Penal Code section 1202.4 is mandatory.

On appeal, defendant contends that the imposition of a restitution fine on an indigent defendant violates due process. She relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164, in which the court held that imposition of a restitution fine without consideration of a defendant's ability to pay violates due process.[1] This court has previously declined to "join the courts that have declared *Dueñas* to have been wrongly decided" but has agreed that "[a]

---

[*] See footnote, *ante,* page 1.

[1] Defendant acknowledges that some courts have declined to follow *People v. Dueñas, supra,* 30 Cal.App.5th 1157. (See, e.g., *People v. Petri* (2020) 45 Cal.App.5th 82, 87; *People v. Adams* (2020) 44 Cal.App.5th 828, 831-832; *People v. Hicks* (2019) 40 Cal.App.5th 320, 325-327, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061, 1067-1068.) The California Supreme Court may soon resolve the conflict. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

suitable framework for analyzing the constitutionality" of a minimum restitution fine imposed under Penal Code section 1203.4 "is the excessive fines prohibition in the Eighth Amendment and its counterpart under the California Constitution, article I, section 17." (*People v. Cowan* (2020) 47 Cal.App.5th 32, 42, review granted, June 17, 2020, S261952.)

In *People v. Cowan, supra*, 47 Cal.App.5th at page 48, this court held, "Because ability to pay is an element of the excessive fines calculus under both the federal and state Constitutions, we conclude that a sentencing court may not impose . . . restitution fines without giving the defendant, on request, an opportunity to present evidence and argument why such monetary exactions exceed his ability to pay." We provided the following guidance for the trial court on remand: The evaluation of ability to pay must include both a defendant's present ability to pay and their future ability to pay. (*Id.* at p. 49.) The defendant bears the burden of proof regarding inability to pay. (*Ibid.*) And, finally, "If, upon remand, an excessive fines objection is made and upheld, the ruling will amount to a determination that the clause in Penal Code section 1202.4, subdivision (c) barring consideration of ability to pay . . . is unconstitutional as applied, thus prohibiting imposition of the fine altogether." (*Id.* at p. 50.) Here, the court found that defendant was indigent and generally unable to pay the fees and fines. Accordingly, the court erred in imposing the restitution fine.

4. *The term of probation must be reduced.*

Assembly Bill No. 1950, signed by the Governor on September 30, 2020, and effective on January 1, 2021 (Stats. 2020, ch. 328, § 2), reduces felony probation terms to two years, with certain exceptions, by modifying Penal Code section 1203.1. When defendant was sentenced, Penal Code section 1203.1 authorized felony probation "for a period of time not exceeding

6

the maximum possible term of the sentence" but where the "maximum possible term of the sentence is five years or less, then the period of suspension of imposition or execution of sentence may, in the discretion of the court, continue for not over five years." (Stats. 2010, ch. 178, § 75.)Effective January 1, 2021, Penal Code section 1203.1, subdivision (a) reads: "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine. . . ."[2]

The legislative history reflects that the Legislature's concern was that lengthy probationary periods do not serve a rehabilitative function and unfairly lead to reincarceration for technical violations. The author's statement with respect to the bill provides: "California's adult supervised probation population is around 548,000 – the largest of any state in the nation, more than twice the size of the state's prison population, almost four times larger than its jail population and about six times larger than its parole population. [¶] A 2018 Justice Center of the Council of State Governments study [citation] found that a large portion of people violate probation and end up incarcerated as a result. The study revealed that 20 percent of prison admissions in California are the result of supervised probation violations, accounting for the estimated $2 billion spent annually by the state to incarcerate people for supervision violations. Eight percent of people incarcerated in a California prison are behind bars for supervised probation violations. Most violations are 'technical' and minor in nature, such as missing a drug rehab appointment or socializing with a friend who has a

---

[2] Penal Code section 1203.1, subdivision (m) identifies two exceptions, not applicable here, to the two-year probation limit.

7

criminal record. [¶] Probation – originally meant to reduce recidivism - has instead become a pipeline for re-entry into the carceral system. [¶] Research [citation] by the California Budget & Policy Center shows that probation services, such as mental healthcare and addiction treatment, are most effective during the first 18 months of supervision. Research also indicates that providing increased supervision and services earlier reduces an individual's likelihood to recidivate. A shorter term of probation, allowing for an increased emphasis on services, should lead to improved outcomes for both people on misdemeanor and felony probation while reducing the number of people on probation returning to incarceration." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.) as amended May 6, 2020, pp. 3-4.) The analysis concludes that a two-year period of supervision is sufficient to fulfill the rehabilitative function of probation. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.) as amended May 6, 2020, p. 6.)[3] Subsequent analysis also cites

---

[3] With respect to the "Time Length of Probation," the analysis reads: "Probation can include conditions which require the defendant to complete certain requirements such as drug, alcohol, or mental health treatment. Defendants might be required to complete domestic violence or other counseling. Probation supervision can serve to connect defendants to community based organizations and resources which can provide support and assistance. Probation can help defendants connect to resources to assist with needs like housing and job training. [¶] A two-year period of supervision would likely provide a length of time that would be sufficient for a probationer to complete any counseling or treatment that is directed by a sentencing court. To the extent that a probationer is not complying with the treatment or counseling directed by the court during a probationary period, the court can revoke the defendant's probation until the defendant is back in compliance. The period while probation is revoked tolls the running of time towards the end point of the probationary period. That tolling process would effectively extend the probationary period for individuals that are not in compliance with the conditions of their probation." (Assem. Com. on Public

8

research by the Prison Policy Institute finding that "like incarceration, probation affects already marginalized populations in troubling ways. Black Americans make up 13% of the U.S. adult population, but 30% of those under community supervision" and cites additional " 'research that suggests that the maximum time needed to engage probationers in behavior change and reduce the likelihood of reoffending is no more than two years, while also creating incentives for individuals to engage in treatment and services early on.' " (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.) as amended June 10, 2020, pp. 4-5.)

Defendant contends that the amendment should be applied retroactively to reduce her period of probation from three years to two. In *People v. Frahs* (2020) 9 Cal.5th 618, 627-628, the California Supreme Court recently summarized the relevant law: "Generally, statutes are presumed to apply only prospectively. [Citation.] However, this presumption is a canon of statutory interpretation rather than a constitutional mandate. [Citation.] Accordingly, 'the Legislature can ordinarily enact laws that apply retroactively, either explicitly or by implication.' [Citation.] Courts look to the Legislature's intent in order to determine if a law is meant to apply retroactively. [Citation.] [¶] In [*In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*)], we held that amendatory statutes that lessen the punishment for criminal conduct are ordinarily intended to apply retroactively. [Citation.] In endeavoring to ascertain the legislative intent in enacting such a statute, we found 'one consideration of paramount importance.' [Citation.] We explained: 'When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and

Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.) as amended May 6, 2020, p. 6.)

9

that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology.' [Citation.] [¶] We reasoned that ' "[a] legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts." ' [Citations.] [¶] '*Estrada* stands for the proposition that, "where the amendatory statute mitigates punishment and there is no saving[s] clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." ' [Citations.] If there is no express savings clause, the statute must demonstrate contrary indications of legislative intent ' "with sufficient clarity" ' in order to rebut the *Estrada* rule."

The Attorney General argues that Assembly Bill No. 1950 is not subject to the *Estrada* presumption of retroactivity because probation is not a form of criminal punishment. The Attorney General acknowledges that the one court

10

to consider this issue on the merits has concluded that the *Estrada* presumption applies to Assembly Bill No. 1950. In *People v. Burton* (2020) __ Cal.App.5th Supp. __ [2020 Cal.App. Lexis 1174], the Los Angeles County Superior Court appellate department found that in the *Estrada* context, probation amounted to punishment. The court observed, "It is unquestionable the reduction of the maximum amount of time a person may be placed on probation . . . inures greatly to the benefit of many persons subject to supervision. At any time a person is on probation, the court has the authority to revoke probation and sentence the person to jail, and a probation violation may even be based on violating court rules that do not amount to new crimes. [Citation.] The longer a person is on probation, the potential for the person to be incarcerated due to a violation increases accordingly. The possibility of incarceration due to being on probation for periods longer than a year based on minor probation violations was relied on by the Legislature in enacting the provision lowering the maximum probationary period. [Citation.]

[¶] Moreover, while a person is on probation, the individual may lawfully be ordered to comply with numerous and varied conditions, including, as in this case, ordering the person to provide prosecutors a list of properties they own. In other situations, they may be subject to search and seizure by law enforcement with or without a warrant [citation], submitting urine samples for narcotics use monitoring [citation], and regularly interrupting persons' work and schooling and traveling to court for progress reports. In addition, when a court's orders are violated, courts have power to increase a probationer's supervision and intensify restrictions by modifying probation conditions. [Citation.] The longer the length of probation, the greater the encroachment on a probationer's interest in living free from government

11

intrusion."[4] (*Id.* at pp. *19-*21.) The court acknowledged that in other contexts probation is not viewed as punishment, but concluded that those cases were not controlling for the purpose of determining retroactivity. The court explained, "It has been noted, a '[g]rant of probation is, of course, qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither "punishment" [citation] nor a criminal "judgment" [citation]. Instead, courts deem probation an act of clemency in lieu of punishment [citations], and its primary purpose is rehabilitative in nature [citation].' [Citations.] [¶] But, although probation is not considered 'punishment' for specified purposes, the presumption of legislative intent in *Estrada* is not confined to only situations when jail and prison sentences are directly decreased due to new laws. A court may presume an intent to broadly apply laws even when they 'merely [make] a reduced punishment possible.' [Citation.] The Legislature in this instance clearly contemplated that reducing the amount of time probation can last was significantly beneficial to persons on probation, and that concomitantly, being on probation for longer than a year was detrimental 'rather than being rehabilitative.' As previously noted, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible' [citation], not solely to changes that reduce 'punishment' as defined in contexts different than assessing whether *Estrada* is applicable." (*Id.* at pp. *22-*23.)

We consider the reasoning in *Burton* persuasive. We add that since the Legislature has determined that the rehabilitative function of probation does not extend beyond two years, any additional period of probation can only be

_____

[4] *Burton* involved a misdemeanor conviction and thus focused on Assembly Bill No. 1950's amendment of Penal Code section 1203a which reduced misdemeanor probation to one year.

regarded as punitive, and therefore within the scope of *Estrada*. Moreover, even if Assembly Bill No. 1950 is not entitled to a *presumption* of retroactivity, the "ameliorative nature" of the amendment "places it squarely within the spirit of the *Estrada* rule." (*People v. Frahs, supra*, 9 Cal.5th at p. 631.) The amendment applies retroactively because of the "clear indication" of the Legislature's intent that it do so. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287.)

In *People v. Brown* (2012) 54 Cal.4th 314, 325, the court emphasized that where the *Estrada* presumption does not apply to a statutory amendment, courts must "consider whether it is 'very clear from extrinsic sources' [citation], or whether such sources support the ' "clear and unavoidable implication" ' [citation], that the Legislature intended the amendment to operate retroactively." (*Id*. at p. 320, citing *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208-1209.) As with *Estrada*, the only reasonable inference to draw from the legislative history of Assembly Bill No. 1950 is that the shorter term of probation "now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*People v. Frahs*, *supra*, 9 Cal.5th at pp. 627-628.) The alternative is untenable: that the legislature intended to subject thousands of criminal defendants whose cases are not yet final to terms of probation determined to be unnecessary for rehabilitation, arguably discriminatory and likely to result in unfair and unnecessary reincarceration.

The Attorney General's arguments to the contrary are not persuasive. The Attorney General argues that the existence of a "procedure for successful termination of probation, where warranted in the interests of justice . . . renders unnecessary a blanket termination of ongoing probations. Those who are ready can seek early discharge . . . . Those who are not ready, who need

13

additional services and supervision as agreed upon, can stay the course." The Attorney General argues further that "[g]iven the relatively short time frames involved in probation, the need to see the plans through and complete requirements before the scheduled end of probation in order for the rehabilitative goals to be met, and the disruption that would occur if probation plans already underway were suddenly cut short, retroactive effect was not intended by the Legislature."

The Attorney General's reliance on *People v. Conley* (2016) 63 Cal.4th 646 is misplaced. In *Conley*, the court held that the Three Strikes Reform Act of 2012, passed by initiative, does not authorize automatic resentencing for third strike defendants serving nonfinal sentences imposed under the former version of the Three Strikes law. (*Id.* at pp. 657-658.) The court relied on three "interpretative considerations" in finding that the *Estrada* presumption had been overridden. First, the court noted that "the Reform Act is not silent on the question of retroactivity. Rather, the Act expressly addresses the question in [Penal Code] section 1170.126, the sole purpose of which is to extend the benefits of the Act retroactively. Section 1170.126 creates a special mechanism that entitles all persons 'presently serving' indeterminate life terms imposed under the prior law to seek resentencing under the new law. By its terms, the provision draws no distinction between persons serving final sentences and those serving nonfinal sentences, entitling both categories of prisoners to petition courts for recall of sentence under the Act." (*Id.* at p. 657.) Second, the court explained that "the nature of the recall mechanism and the substantive limitations it contains call into question the central premise underlying the *Estrada* presumption: that when an amendment lessens the punishment for a crime, it is reasonable to infer that the enacting legislative body has categorically determined that 'imposition of a lesser

14

punishment' will in all cases 'sufficiently serve the public interest.' " (*Id*. at p. 658.) Finally, the court noted that "unlike in *Estrada*, the revised sentencing provisions at issue in this case do more than merely reduce previously prescribed criminal penalties. They also establish a new set of disqualifying factors that preclude a third strike defendant from receiving a second strike sentence . . . [which] add an additional layer of complexity to defendant's request for automatic resentencing under the revised penalty scheme." (*Id*. at p. 659.) The same considerations do not weigh in favor of prospective application in this instance.

Assembly Bill No. 1950 is silent on retroactivity; it does not create a mechanism by which probationers may petition for early termination. Penal Code section 1203.3 already existed.[5] While that procedure may prove beneficial to a probationer whose case is already final, it does not support an inference of legislative intent with respect to a probationer whose sentence is not yet final. Moreover, unlike in *Conley*, the amendment of Assembly Bill No. 1950 reflects a categorical determination that a shorter term of probation is sufficient for the purpose of rehabilitation. The court is not required to make a determination regarding dangerousness, the value of further probationary supervision, or any other consideration. Rather, the Legislature has made that determination. There is no indication in the legislative history that the Legislature was concerned with disruptions to probationary proceedings already in progress. To the contrary, the studies cited in the legislative history indicate there is little if any rehabilitative impact of services continued beyond two years.

---

[5] Penal Code section 1203.3, subdivision (a) authorizes a court to "at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person held."

15

Accordingly, we shall reduce the term of defendant's probation to two years.

## Disposition

Defendant's probation is reduced to a term of two years and the conditions of defendant's probation are amended to require that she "abstain from the use and possession of controlled substances including marijuana without a valid prescription." In addition, the $300 fine imposed under Penal Code section 1203.4 is stricken. The judgment is affirmed in all other respects.


POLLAK, P. J.

WE CONCUR:

TUCHER, J.
BROWN, J.

16

Trial court:                         San Mateo County Superior Court

Trial judge:                      Honorable Nancy Fineman

Counsel for plaintiff and appellant:     Jonathan D. Roberts, under appointment by the Court of Appeal

Counsel for defendant and respondent:     Xavier Becerra
Attorney General of California
Lance E. Winters
Chief Assistant Attorney General
Jeffrey M. Laurence
Senior Assistant Attorney General
Catherine A. Rivlin
Supervising Deputy Attorney General
Basil R. Williams
Deputy Attorney General

17